IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION No. 2:15-CV-160 (WOB-CJS)

BRANDON FREEMAN, ET AL.                                    PLAINTIFFS

VS.            MEMORANDUM OPINION AND ORDER

DELTA AIRLINES, INC., ET AL.                               DEFENDANTS

This is a supplemental Memorandum Opinion and Order addressing the claims of plaintiff Anika Nicole Lackey. It incorporates by reference the facts and law set forth in the Memorandum Opinion and Order previously filed on the claims of plaintiff Brandon Freeman ("the Freeman opinion). (Doc. 150).

This matter is now before the Court on defendants' motions for summary judgment. (Docs. 109, 114).

*Factual and Procedural Background*

Anika Nicole Lackey ("Lackey") was hired by Delta in 2010 after her previous employer, Comair, went out of business. (Lackey Dep., Doc. 74, 62). Like other plaintiffs, she was employed as a part-time Ready-Reserve employee at CVG and worked full-time elsewhere. (*Id*. 42-56, 76). As discussed below, she remains employed by Delta.[1]

A.   **2011 Attendance Problems**

On May 28, 2011, Lackey received a warning letter for unsatisfactory attendance. (Doc. 74-1 at 6). This letter accurately reflects the times that Lackey had been absent or

---

[1] The record reflects Lackey's employment status as of the time her deposition was taken on September 28, 2016. (Doc. 74).

tardy. (Lackey Dep. 89). On June 3, 2011, Lackey was placed on probation when she was almost three hours late for a shift. (Doc. 74-1 at 7). Lackey testified that this letter also is accurate. (Lackey Dep. 89-90).

On September 3, 2011, Lackey was given a Probation/Final Warning letter for failing to meet an assigned inbound flight. (Doc. 74-1 at 8). The letter also stated that the supervisor had discovered that Lackey had failed to clock in or out on twenty occasions since being placed on probation. Her probation was thus extended by three months.

Thereafter, Lackey achieved perfect attendance and was removed from probation effective March 8, 2012. (Doc. 74-1 at 9).

### B. July 2014 EEOC Charge

In July 2014, Lackey filed an EEOC charge alleging that she had "suffered systemic Discrimination on account of my race" at Delta. (Doc.74-1 at 19-20). She alleged that black Ready-Reserve employees received harder work assignments; that she had been discriminated against in being disciplined in 2011; that a male employee had commented about a female black employee's body odor; that an employee named Mark stated to her that "all blacks have trouble with the law"; and that white employees were not disciplined for attendance problems. (*Id.*).

In September 2014, Joanne Guerrant and Barbara Shaw of Delta's Human Resources Department in Atlanta interviewed Lackey. (Doc. 74-1 at 21-23). They discussed Lackey's allegations, and Lackey provided them with additional information. Lackey also told them that the environment at CVG had gotten "better" after she filed her EEOC charge.

HR then reviewed information regarding discipline in the Ready-Reserve department and interviewed employees in relation to Lackey's allegations. At the

conclusion of this investigation, Shaw wrote a letter to Lackey explaining the steps that HR had taken to investigate Lackey's concerns and informing her that Delta had been unable to substantiate her allegations of racial discrimination at CVG. (Doc. 74-1 at 58-59).

C. **Allegations Regarding Racial Harassment**

Lackey testified in her deposition to the following things that she believed were evidence of racial harassment:

● Different ALAs (non-management lead employees) called her "girl." (Lackey Dep. 99-102). She testified that she was also offended if someone said "hey girl, how are you" when she walked in the breakroom. (Lackey Dep. 165).

● A co-worker named Tim Richardson told her that he had heard others discussing work assignments and that someone referred to something as "nigger work." She did not hear that comment herself or report it to anyone at Delta. (Lackey Dep. 103-06). Lackey testified that Michelle Race told her that Chuck Jones said that "these uppity niggers think they're better than everyone else." Lackey did not hear this alleged remark, and she testified that she never heard anyone at Delta use the "N" word. (Lackey Dep. 332).

● She heard an ALA named Eric Weber talking about the odor of her co-worker, Aminata Tall, saying "can't these black girls do something about their odor?" She did not report this statement to anyone. (Lackey Dep. 107-08).

● She was offended by a picture she saw that someone drew of her co-worker, David Perdue, depicting him behind bars. (This related to Perdue being escorted out of the airport due to his security badge being expired.) Another employee in the area remarked that Perdue had a criminal history "you know, just like most African American[s]." Lackey told the employee that she was offended by that, and she told supervisor Jimmy Davis that she was offended by the sign. When she returned from her locker after approximately 30 minutes, the sign was gone. (Lackey Dep. 109-113).

● Lackey also testified that she felt there was discrimination in discipline and work assignments. (Lackey Dep. 118-27).

● Lackey was offended by employees who had tattoos of spider webs because she believed they represented that the person has killed a minority or are related to the Aryan Brotherhood. (Lackey Dep. 181-86).

● Lackey felt it was a "race issue" that some Ready-Reserve employees complained about Brandon Freeman and Jeff Love (who are African-American) being

allowed to be late to work due to their firefighter jobs. (Lackey Dep. 238-41).

- Lackey was offended when, on a couple of instances, white co-workers yelled at her for not moving fast enough or not doing something the way they wanted. (Lackey Dep. 262-64, 280).

    D.   **Transfer to LaGuardia**

In 2016, Lackey requested and was granted a transfer to LaGuardia Airport in New York, where she remains employed in the Ready-Reserve department. (Lackey Dep. 10).

*Analysis*

A.   **Race Discrimination**

As noted in the Freeman opinion, under Title VII, a plaintiff must file an EEOC charge within 300 days of the discrete employment action they challenge. Claims under 42 U.S.C. § 1981 are subject to a four-year statute of limitations, and a KCRA claim is subject to a five-year statute of limitations.

For these reasons, the disciplinary warnings and probation that Lackey received in 2011 are actionable only under the KCRA.

Delta argues, however, that these disciplinary measures were not "adverse employment actions" and that Lackey thus cannot state a prima facie case of race discrimination based upon them. This argument is well taken.

For purposes of the prima facie case, "adverse employment actions are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *O'Donnell v. Univ. Hosp. Cleveland Med. Ctr.*, 833 F. App'x 605, 620 (6th Cir. 2020) (citation omitted).

Here, Lackey has not shown that the three written disciplinary warnings that she received in 2011 had any material effect on her employment.

4

In *Hill v. Nicholson*, 383 F. App'x 503, 509 (6th Cir. 2010), the Sixth Circuit held that a written counselling issued to the plaintiff for a performance error was not an "adverse employment action" for purposes of a prima facie claim of race discrimination because it had no long-term impact on the terms or conditions of plaintiff's employment. *See also Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp.2d 814, (M.D. Tenn. 2011) (disciplinary writeup held not to be an adverse employment action).

Lackey's brief on this issue is conclusory at best. (Doc. 129 at 19-20). She asserts that while she was on probation, she was not eligible for pay increases or promotions, but she has adduced no evidence that such increases or promotions were even available, but denied to her, during that time.[2]

Finally, for the same reasons discussed in the Brandon Freeman opinion, allegedly less favorable work assignments do not constitute an "adverse employment action" under clear Sixth Circuit law.

For these reasons, Lackey has failed to state a prima facie case of race discrimination.

B.  **Racial Harassment**

The standards for a racially hostile work environment are set forth in detail in the Brandon Freeman opinion.

Pertinent here, only harassment *based on the plaintiff's race* satisfies the third element of the hostile environment test. *Williams v. CSX Trans. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011).

---

[2] It should also be noted that, in the "fact" section of Lackey's brief, there is a paragraph describing missed promotion and transfer opportunities, but this appears to be a botched "cut and copy" job because the cited evidence relates not to Lackey, but to another plaintiff, Kenneth Gaines.

5

Many of the things that Lackey cites as "harassment" have no objective racial component at all. The fact that other employees called her "girl," even when just saying hello, is not racial on its face. The same is true of the incidents in which co-workers yelled at her; her offense at co-workers' spiderweb tattoos; and her interpretation of the complaints about Freeman and Love being allowed to be late to work.

Even if Lackey perceived these things as harassing, she offers no evidence that they were based on race. And her subjective belief that they were "based on race" is insufficient to create a genuine dispute of material fact. *Watkins v. Wilkie*, 815 F. App'x 1003, 1005 (6th Cir. 2020) (citation omitted).[3]

Lackey does cite four remarks that are racial on their face. Two, however, were not made in her presence but rather were related to her by co-workers: Tim Richardson told her that he overhead another employee (unidentified) call an assignment "nigger work," and Michelle Race told her that Chuck Jones made a remark about "uppity niggers."

While these statements are certainly offensive, "comments not directed at the plaintiff are considered relatively less severe." *Id.* at 1004. For her part, Lackey testified that she personally never heard anyone at Delta use the "N" word. (Lackey Dep. 332).

The only two comments that Lackey testified were made in her presence were Eric

---

[3] Lackey's assertion in her brief that these statements constitute "direct evidence" is patently erroneous. (Doc. 129 at 22). They have no relation to any action taken against Lackey, adverse or otherwise. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 713 (6th Cir. 2006) (evidence required to create triable issue under "mixed motive" analysis is that from which one could reasonable infer that plaintiff's race was a "motivating factor" in an adverse action taken against plaintiff). For the same reason, Lackey's reliance on *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642 (6th Cir. 2012), is misplaced because the evidence there was that defendant's decisionmaker directly referenced plaintiff's race as the reason she was to be fired. *Id.* at 650. Again, Lackey suffered no adverse employment action, she remains employed by Delta, and there is no evidence of any statements regarding her race.

Weber stating to a group of people, "why can't these blacks girls do something about their odor," and another employee stating that most African Americans have criminal histories.

Again, these remarks were not directed at plaintiff and were made by co-workers rather than supervisors. And while race-related, they constitute the type of "occasional offensive utterances" that the Sixth Circuit has held are insufficient to create an actionable hostile work environment. *See, e.g., Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, (6th Cir. 2011) (finding no hostile environment where plaintiff's supervisor called Jesse Jackson and Al Sharpton "monkeys," asked plaintiff why black people "cannot name their children stuff that people can pronounce, and told her that black people should "go back to where they came from"). *See also Norman v. Rolling Hills Hosp.*, 820 F. Supp.2d 814, 821 (M.D. Tenn. 2011) (evidence that co-workers asked plaintiff how it felt to have a black father and white mother; asked her how she could afford to live by a lake and own a laptop; told her she needed to "quiet down" because "we're not in the hood"; asked her "Don't you all eat chicken?"; and that plaintiff heard a co-worker tell another African-American employee that she "looked like Buckwheat" was insufficient to create hostile environment; the statements were offensive but isolated, mere offensive utterances).

Lackey's memorandum in opposition is cursory at best as to this claim, and it does not discuss this evidence in the context of Sixth Circuit authority. (Doc. 129 at 17-19).

In sum, defendants are entitled to summary judgment on Lackey's hostile environment claim.

### C. Retaliation

Lackey also alleges that she was retaliated against for filing a charge of discrimination with the EEOC in 2014. (Doc. 129 at 20).

Delta first argues that, as to Title VII, Lackey failed to exhaust her administrative

remedies by filing a second charge regarding the alleged retaliation. This is incorrect as a matter of law. "The Sixth Circuit has held . . . that "retaliation growing out of the EEOC charge is reasonably foreseeable and therefore a plaintiff is not required to file yet another EEOC charge." *Meyers v. Northern Kentucky Univ.*, Civil Action No. 2011-113, 2013 WL 954230 (E.D. Ky. Mar. 11, 2013) (quoting *Scott v. Eastman Chem. Co.,* 275 F. App'x 466, 474 (6th Cir.2008)).

Nonetheless, Lackey cannot raise a triable issue of retaliation because she fails to satisfy the elements of this claim.

Lackey first alleges that an on-the-job injury that she suffered later in 2014 was a result of retaliation. She testified that two full-time co-workers who were running the belt loader taking bags off a plane were running the loader very fast. Lackey, who was delivering bags, tried to grab a bag, caught her arm, and was injured. (Lackey Dep. 247-53). She testified that she believed that these two employees intentionally speeded up the loader to make her job harder because they were "friends with management" and were "upset about the EEOC lawsuit" that was filed. (Lackey Dep. 400-01).

Even assuming that this incident could constitute an adverse action for purposes of a retaliation claim, Lackey has failed to identify any evidence to support the element of causation. She does not identify these employees—who were co-workers and not management— or any evidence that they even knew about her EEOC charge. There is thus no basis from which one could reasonably infer that Lackey's EEOC charge caused these two employees to engage in retaliatory conduct. *See Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 46 (6th Cir. 2020) (noting that the element of causation "requires proof, even at the prima facie stage, that the unlawful retaliation would not have occurred but for [plaintiff's] protected activity").

8

Lackey also faults her supervisor, David Gosney, for writing up this incident as a safety/teamwork matter when she contends it was a deliberate act. (Lackey Dep. 246-47). Again, however, she cites no evidence that connects Gosney's preparation of this report to her EEOC charge.

Lackey next alleges that, in April 2016, a supervisor named Chuck LeValley gave her "double" assignments over two weekends. (Lackey Dep. 190-92). Lackey felt that this was unfair and that she was being retaliated against. (*Id.*).

Again, even assuming that such assignments could constitute an adverse action, Lackey raises no triable issue. She has cited to no evidence that this supervisor even knew that she had filed an EEOC charge, but assuming he did, these assignments occurred *a year and eight months* after the EEOC filing. The Sixth Circuit has noted that even a period of eight months "is a long time for an employer to wait to retaliate against an employee." *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004). No reasonable jury could thus infer a causal connection between Lackey's July 2014 EEOC charge and these weekend assignments nearly two years later.

Finally, Lackey testified that, after this lawsuit was filed in 2015, she felt like supervisor Charles Unkraut followed her from "gate to gate" on a regular basis. (Lackey Dep. 242). She testified that she spoke to Unkraut about this and he told her it was part of his job and that he went to the gates all the time. (Lackey Dep. 318; Unkraut Dep. 194-202). Lackey also testified that it was not "uncommon for supervisors to come out in general to check and see if you're doing your job correctly, and they evaluate you and your performance." (Lackey Dep. 318).

Lackey's memorandum in opposition does not discuss Unkraut in regard to her retaliation claim, not does she cite any evidence that would satisfy the elements of a

9

retaliation claim as to Unkraut's actions.

Defendants are thus entitled to summary judgment on Lackey's retaliation claims.

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that defendants' motions for summary judgment on the claims of plaintiff Anika Nicole Lackey (Docs. 109, 114) be, and are hereby, **GRANTED**.

This 22nd day of June 2021.



Signed By:
William O. Bertelsman  WOB
United States District Judge