IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION No. 2:15-CV-160 (WOB-CJS)

BRANDON FREEMAN, ET AL.                             PLAINTIFFS

VS.                  <u>MEMORANDUM OPINION AND ORDER</u>

DELTA AIRLINES, INC., ET AL.                         DEFENDANTS

This is a supplemental Memorandum Opinion and Order addressing the claims of plaintiff Kenny Gaines. It incorporates by reference the facts and law set forth in the Memorandum Opinion and Order previously filed on the claims of plaintiff Brandon Freeman ("the Freeman opinion). (Doc. 150).

This matter is now before the Court on defendants' motions for summary judgment. (Docs. 111, 113).

*Factual and Procedural Background*

Plaintiff Kenny Gaines was hired by Delta in 2010 after his previous employer, Comair, went out of business. (Gaines Dep., Doc. 62, 22). Like other plaintiffs, he was employed as a part-time Ready-Reserve employee at CVG. Gaines also worked full time at the Westin Hotel in Cincinnati. (Gaines Dep. 14-15). As discussed below, he remains employed by Delta.[1]

---

[1] The record reflects Gaines' employment status as of the time his deposition was taken on October 12, 2016. (Doc. 62).

A.   **2012 Discipline**

On May 6, 2012, Gaines received a "Written Coaching" for job performance, which cited several incidents: a shift swap no-show; failing to wear steel-toed boots while in the cargo bin; missing a gate assignment; and being late to a gate assignment. (Doc. 62-1 at 7-8). Gaines testified that the boot incident happened because he had to remove his boot temporarily because a piece of steel was loose and he had to adjust it. (Gaines Dep. 44-47). Gaines declined to sign this write-up because he thought it was unfair. (Gaines Dep. 64-65).

On August 31, 2012, Gaines received a "Corrective Action Notice" for job performance for failing to show up for a shift swap assignment. (Doc. 62-1 at 9-12). Gaines testified that he was, in fact, late for the shift in question. (Gaines Dep. 69-71).

Gaines testified that he thought he was disciplined because of his race but he testified that he does not know what discipline other employees received. (Gaines Dep. 37-39, 72).

B.   **Testimony Regarding Harassment**

Gaines testified that defendants Gosney and Howe were looking for his co-worker David Perdue, who is also African American, and they called him by Perdue's name. (Gaines Dep. 54-55). When he corrected them by telling them that he was not Perdue, they said "you people all look alike." (*Id.*). This happened a few times.

Gaines testified that other than those remarks, he never heard any manager at Delta use a racially derogatory or offensive term. (Gaines Dep. 55).

Gaines also testified that he saw graffiti written in the cargo bins, including the "N" word and "I hate Ns," but he did not complain about it. (Gaines Dep. 56-59).

Gaines testified he heard Mark Weber tell co-worker Aminata Tall that she

2

"stinks." (Gaines Dep. 114). Gaines also testified that he heard "somebody" call Michelle Race a "N" lover, but then stated "No, I can't say for sure" but that it was "a white lady" and could not say whether anyone else heard it. (Gaines Dep. 116-17).

Finally, Gaines testified that black Ready-Reserve employees got harder work assignments, such as bigger planes with more bags. (Gaines Dep. 134-37).

### C. July 2014 EEOC Charge

Gaines filed a charge of discrimination with the EEOC in July 2014. (Doc. 62-1 at 20-21).

Gaines testified that nothing bad has happened to him in his employment at Delta since filing the charge. (Gaines Dep. 146).

### D. Transfer to Atlanta and Promotion

In late summer or early fall 2014, Gaines applied for a job in reservations at CVG, as well as a full-time position in Dept. 120 in Atlanta. (Gaines Dep. 8-9, 84-85). He was awarded both positions, and he chose to take the position in Atlanta. Approximately nine months later, he was promoted to an ALA position. (*Id.* at 147).

*Analysis*

### A. Race Discrimination

As noted in the Freeman opinion, under Title VII, a plaintiff must file an EEOC charge within 300 days of the discrete employment action they challenge. Claims under 42 U.S.C. § 1981 are subject to a four-year statute of limitations, and a KCRA claim is subject to a five-year statute of limitations.

For these reasons, the disciplinary warnings that Gaines received in May and August 2012 are actionable only under the KCRA and § 1981.

Delta argues, however, that these disciplinary measures were not "adverse

3

employment actions" and that Gaines thus cannot state a prima facie case of race discrimination based upon them. This argument is well taken.

For purposes of the prima facie case, "adverse employment actions are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *O'Donnell v. Univ. Hosp. Cleveland Med. Ctr.*, 833 F. App'x 605, 620 (6th Cir. 2020) (citation omitted).

Here, Gaines has not shown that the disciplinary warnings he received had any adverse material effect on his employment.

In *Hill v. Nicholson*, 383 F. App'x 503, 509 (6th Cir. 2010), the Sixth Circuit held that a written counselling issued to the plaintiff for a performance error was not an "adverse employment action" for purposes of a prima facie claim of race discrimination because it had no long-term impact on the terms or conditions of plaintiff's employment. *See also Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp.2d 814, (M.D. Tenn. 2011) (disciplinary writeup held not to be an adverse employment action).

In his memorandum in opposition, Gaines states that he "desired to apply for mid-supervisory positions" at CVG but was told that he could not be promoted because he was on probation. (Doc. 126 at 6). This assertion is not supported by the record.

Gaines stated in his deposition that he applied for a full-time ramp position at CVG, (Gaines Depo. 85), but he does not provide any evidence of such an application, when he applied, what reason he was given for not receiving the position, or who did receive the position. This is simply too vague to satisfy this element of an "adverse employment action."

Gaines also argues that the allegedly less favorable work assignments constitute an

4

"adverse employment action." (Doc. 126 at 14-16). However, as discussed at length in the Freeman opinion, the Sixth Circuit and courts within it have held that allegedly unfavorable or more difficult assignments, unaccompanied by a change in pay or hours worked, generally do not rise to the level of an "adverse employment action" for purposes of a disparate treatment claim.

Gaines' brief on this issue is entirely conclusory, and he cites no evidence that any material aspect of his job was altered based on the ever-changing work assignments.

For these reasons, Gaines has failed to state a prima facie case of race discrimination.

### B. Racial Harassment

Gaines' memorandum in opposition cites the allegedly discriminatory work assignments as evidence in support of his hostile environment claim. (Doc. 126 at 16-18). That is plainly insufficient to create a "severe and pervasive" hostile environment.

Gaines' brief does not even mention the entirety of his deposition testimony that would be relevant to this claim. Construed in his favor, however, it is that:

- Supervisors stated to Gaines "you people all look alike" when mistaking Gaines for another employee, which Gaines testified happened a few times, and he interpreted it as referring to black employees;

- Gaines saw graffiti written in the cargo bins, including the "N" word and "I hate Ns," but he did not complain about it;

- Gaines heard Mark Weber tell co-worker Aminata Tall that she "stinks"; and

- Gaines he heard "somebody" call Michelle Race a "N" lover, but then stated "No, I can't say for sure" but that it was "a white lady" and could not say whether anyone else heard it.

Applying the relevant hostile environment factors, this testimony is insufficient to create a triable issue as to such a claim.

5

The only comment Gaines attributes to management is "you people all look alike." Assuming this refers to Gaines' race, it is certainly offensive. But a handful of non-threatening offensive remarks do not create an actionable hostile environment. And Gaines testified that he otherwise never heard any manager at Delta use a racially derogatory or offensive term. (Gaines Dep. 55).

Next, Gaines does not attribute the alleged "N" word graffiti in the cargo bins to management, and he did not complain about it. And the "stinks" remark was not directed at Gaines but to Tall, and his testimony was that it occurred once. Finally, the alleged "N" lover remark also was not directed to Gaines, he could not identify the speaker, and when asked in his deposition if it affected him in the workplace, he stated, "No, not at all. I got my own problems." (Gaines Dep. 122).

Thus, even viewed cumulatively, these incidents are insufficient to permit a reasonable finding that Gaines was subjected to severe and pervasive race-based harassment which interfered with his work performance.

Defendants are thus entitled to summary judgment on this claim.

**C.    Retaliation**

Gaines also alleges that he was retaliated against for filing a charge of discrimination with the EEOC in 2014.

However, Gaines testified that nothing bad has happened to him at Delta since he filed the EEOC charge. (Gaines Dep. 146). And, of course, he subsequently received the full-time position in Atlanta on which he bid, and he was later promoted.

Finally, Gaines abandoned this claim by not discussing it in his memorandum in opposition. *Hicks v. Concorde Career College*, 449 F. App'x 484, 487 (6th Cir. 2011).

6

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that defendants' motions for summary judgment on the claims of plaintiff Kenny Gaines (Docs. 111, 113) be, and are hereby, **GRANTED**.

This 22nd day of June 2021.



Signed By:
*William O. Bertelsman* WOB
United States District Judge