IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION No. 2:15-CV-160 (WOB-CJS)

BRANDON FREEMAN, ET AL.                                    PLAINTIFFS

VS.                          MEMORANDUM OPINION AND ORDER

DELTA AIRLINES, INC., ET AL.                               DEFENDANTS

    This is a supplemental Memorandum Opinion and Order addressing the claims of plaintiff David Perdue. It incorporates by reference the facts and law set forth in the Memorandum Opinion and Order previously filed on the claims of plaintiff Brandon Freeman ("the Freeman opinion). (Doc. 150).

    This matter is now before the Court on defendants' motions for summary judgment. (Docs. 111, 115).

### *Factual and Procedural Background*

    Plaintiff David Perdue was hired by Delta on February 20, 2012. (Perdue Dep., Doc. 63, 48). Like other plaintiffs, he was employed as a part-time Ready-Reserve employee at CVG. (Perdue Dep. 53). At the time he was hired, Perdue was also working as a bus driver for First Student. (Perdue Dep. 43-47). As discussed below, he remains employed by Delta.[1]

---

[1] The record reflects Perdue's employment status as of the time his deposition was taken on October 28, 2016. (Doc. 63).

### A.    <u>2012 Discipline</u>

On November 5, 2012, Perdue received a "Written Coaching" for reliability. (Doc. 63-1 at 16-17). The writeup stated that Perdue had been absent or a no-show three times since he was hired, and that he had received several verbal coachings regarding shift swaps. He testified that the issue of the shift swap was unfair because he had arranged for Gaines to cover one of his shifts when he double-booked himself, but that Unkraut sent Gaines home because the swap was arranged less than 48 hours before the scheduled shift. (Perdue Dep. 75-76). He testified that he felt this was due to his race, but he did not complain about it because he did not want the attention. (Perdue Dep. 101-02).

On January 2, 2013, Perdue received a Corrective Action Notice for Attendance, which stated that he had been absent eight times since beginning his employment. (Doc. 63-1 at 18-19). Perdue testified that he did not feel this discipline had anything to do with his race. (Perdue Dep. 106).

### B.    <u>Testimony Regarding Harassment</u>

Perdue testified that supervisors Doug Howe, Dale Unkraut, and Leslie Martinez mistook him for co-worker Kenny Gaines. (Perdue Dep.57-61). He testified that he did not take offense at first because he and Gaines favor one another, but later they mistook him for another black employee and commented "you all look alike."

Other than those remarks, Perdue he never heard any manager or co-worker at Delta use a racially derogatory term or direct such a term at another employee. (Perdue Dep. 61-62).

Perdue testified that on one occasion, he accidentally got into another employee's tug, and the employee (who was an older white person) yelled at him and called him something like a "stupid MF-er." (Perdue Dep. 62, 190-92). Perdue testified there was

nothing racial about that incident, although he later mentioned it to Martinez and expressed his view that he would have been fired for such behavior.

Perdue testified that in 2013, his security badge had expired because he forgot to renew his driver's license, and the security system would not allow him to enter. (Perdue Dep. 63-67). He let his supervisor know, and was told "just fix it, see you at work tomorrow." A policeman escorted Perdue off the Delta premises.

Later that night, his co-worker Nicole Lackey sent him a photo of a picture that someone had drawn and put on a door that said, "Free Dave." Perdue testified that it looked "kind of like a monkey in jail." (Perdue Dep. 65, 244). He never saw the actual drawing, does not know who drew it, and did not complain about it. (Perdue Dep. 65-67).

Perdue also testified that he would see graffiti in the cargo bins of planes with the "N" word. (Perdue Dep. 68-69). He testified that the graffiti could have originated anywhere because planes came from all over, and he did not complain to management about it.

Perdue testified that he felt that the African-American Ready-Reserve employees at CVG got the harder flights with heavier bags. (Perdue Dep. 160-62, 172). He also testified that black employees would get in trouble if they were a minute late, but white employees would not. (Perdue Dep. 180-82).

Finally, he heard a co-worker state "it is stinky" in here, but he did not hear the person direct that comment to his co-worker Aminata Tall or mention her ethnicity. (Perdue Dep. 227-29).

### C.   July 2014 EEOC Charge

Perdue filed a charge of discrimination with the EEOC in July 2014. (Doc. 63-1 at 28-30). He testified in his deposition that he does not feel that he has been retaliated

against since filing the charge. (Perdue Dep. 232-33).

D.    **Transfer to Atlanta**

In October 2014, Perdue was awarded a full-time job at Delta in Atlanta. (Perdue Dep. 11-12). He testified that this was favorable treatment. (Perdue Dep. 208).

*Analysis*

A.    **Race Discrimination**

As noted in the Freeman opinion, under Title VII, a plaintiff must file an EEOC charge within 300 days of the discrete employment action they challenge. Claims under 42 U.S.C. § 1981 are subject to a four-year statute of limitations, and a KCRA claim is subject to a five-year statute of limitations.

For these reasons, the disciplinary warning that Perdue received in November 2012 is actionable only under the KCRA and § 1981.

Delta argues, however, that this disciplinary warning was not an "adverse employment action" and that Perdue thus cannot state a prima facie case of race discrimination. This argument is well taken.

For purposes of the prima facie case, "adverse employment actions are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *O'Donnell v. Univ. Hosp. Cleveland Med. Ctr.*, 833 F. App'x 605, 620 (6th Cir. 2020) (citation omitted).

In *Hill v. Nicholson*, 383 F. App'x 503, 509 (6th Cir. 2010), the Sixth Circuit held that a written counselling issued to the plaintiff for a performance error was not an "adverse employment action" for purposes of a prima facie claim of race discrimination because it had no long-term impact on the terms or conditions of plaintiff's employment.

*See also Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp.2d 814, (M.D. Tenn. 2011) (disciplinary writeup held not to be an adverse employment action).

Here, Perdue has not shown that the disciplinary warning he received in November 2012 had any adverse material effect on his employment. His memorandum in opposition does not discuss this issue at all. (Doc. 125 at 19-21).

Instead, Perdue argues that the allegedly more difficult work assignments constitute an adverse action. (*Id.*). However, as discussed at length in the Freeman opinion, the Sixth Circuit and courts within it have held that allegedly unfavorable or more difficult assignments, unaccompanied by a change in pay or hours worked, generally do not rise to the level of an "adverse employment action" for purposes of a disparate treatment claim.

Perdue's brief on this issue is entirely conclusory, and he cites no evidence that any material aspect of his job was altered based on the ever-changing work assignments.

For these reasons, Perdue has failed to state a prima facie case of race discrimination.

### B.   Racial Harassment

Perdue's memorandum in opposition cites the allegedly discriminatory work assignments as evidence in support of his hostile environment claim. (Doc. 125 at 22-23). That is plainly insufficient to create a "severe and pervasive" hostile environment.

Perdue's brief does not analyze the entirety of his deposition testimony that would be relevant to this claim. Construed in his favor, however, it is:

- Supervisors mistook Perdue for other African-American employees and stated "you all look alike";

- A white employee yelled at Perdue when he accidentally got into the employee's tug, calling him a "stupid MF-er

- A co-worker sent him a photo of the "Free Dave" picture that someone posted;

- Perdue saw graffiti written in the cargo bins, including the "N" word, but he did not complain about it; and

- Perdue heard a co-worker state "it is stinky in here," which he later learned was about co-worker Aminata Tall.

Applying the relevant hostile environment factors, this testimony is insufficient to create a triable issue as to such a claim.

The only comment Perdue attributes to management is "you all look alike." Assuming this refers to Perdue's race, it is certainly offensive. But a handful of non-threatening offensive remarks do not create an actionable hostile environment. And Perdue testified that he otherwise never heard any manager at Delta use a racially derogatory or offensive term. (Perdue Dep. 61-62).

As for the white employee who yelled and cursed at him, he testified that it had no racial content.

Next, Perdue does not attribute the alleged "N" word graffiti in the cargo bins to management, and he did not complain about it. And the "stinky" remark was not directed at Perdue, and he only later learned that Tall had been offended by it as related to her ethnicity.

Thus, even viewed cumulatively, these incidents are insufficient to permit a reasonable finding that Perdue was subjected to severe and pervasive race-based harassment which interfered with his work performance.

Defendants are thus entitled to summary judgment on this claim.

## C.  **Retaliation**

Perdue testified that he did not feel that he has been retaliated against for filing his

EEOC charge in July 2014. (Perdue Dep. 232-33). And, Perdue abandoned this claim in his memorandum in opposition. *Hicks v. Concorde Career College*, 449 F. App'x 484, 487 (6th Cir. 2011).

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that defendants' motions for summary judgment on the claims of plaintiff David Perdue (Docs. 111, 115) be, and are hereby, **GRANTED**.

This 22nd day of June 2021.



Signed By:

<u>*William O. Bertelsman*</u>

United States District Judge